**NCC SUNDAY INSERTS, INC. and Marketing Corporation of America, Plaintiffs,**

v.

**WORLD COLOR PRESS, INC., Defendant.**

**No. 86 Civ. 9647 (GLG).**

United States District Court, S.D. New York.

Aug. 30, 1988.

See also 666 F.Supp. 47.

---

**328**

Levett, Rockwood & Sanders, P.C., Westport, Conn. (David R. Levett, Madeleine F. Grossman, Dorit S. Heimer, of counsel), and Friedman, Wang & Bleiberg, P.C., New York City, for plaintiffs.

Gallop, Johnson & Neuman, St. Louis, Mo. (Samuel C. Ebling, David W. Harlan, Thomas M. Newmark, of counsel), Latham & Watkins, New York City (Selvyn Seidel, John D. Shyer, of counsel), for defendant.

## OPINION

GOETTEL, District Judge:

The defendant World Color Press, Inc. ("World") moves to dismiss counts two and three of the plaintiffs' first amended complaint, contending that the plaintiffs have not met the particularity requirements of Fed.R.Civ.P. 9(b). Count two of the plaintiffs' amended complaint alleges fraud in connection with the negotiation and performance of a requirements contract between the parties for printing services. Count three, which is based on the same factual allegations as count two, alleges unfair and deceptive trade practices in violation of the Connecticut Unfair Trade Practices Act, Conn.Gen.Stat. §§ 42–110a *et seq.*

## BACKGROUND

Until November 1986, NCC Sunday Inserts ("NSI"), a corporation then indirectly owned by Marketing Corporation of America ("MCA"), was in the business of placing promotional advertising. NSI published free-standing inserts for inclusion in newspapers worldwide.

On December 28, 1982, NSI entered into a contract with World that provided that World would print all of NSI's requirements for inserts from January 1, 1983 through December 31, 1985. The contract was extended three times, most recently to run through December 31, 1994.

In November 1986, allegedly due to competitive pressures and an inability to remain economically viable, NSI informed World that it was selling its insert business to GVF Communications ("GVF"), now known as GV Investment, and that all issues scheduled for printing after December 1986 would be discontinued. Both before and after the sale of NSI's assets to GVF, World advised NSI that it considered the discontinuance to be a breach of its contract, and that World was considering taking legal action. NSI subsequently brought the instant action seeking a declaratory judgment that its actions did not constitute a breach of contract. On the day following the filing of NSI's action, World brought its own action in Federal District Court in Illinois for breach of contract. The Illinois action was stayed, and World then filed a counterclaim in this action against NSI and GVF alleging breach of contract, promissory estoppel, and tortious interference with contract.

Following discovery, NSI alleges that it found evidence of a pattern of misrepresentations and omissions by World, and therefore amended its original complaint to al-

lege fraudulent overcharging, violations of the Connecticut Unfair Trade Practices Act, and breach of contract. In its amended complaint, plaintiffs allege six major areas of omissions and misrepresentations. They relate to

(1) a hidden recovery against NSI of World's share of the cost of printing equipment, which cost was understood by NSI to be shared equally between World and NSI;

(2) an overestimate by World for paper cost which was never adjusted by World to reflect the actual, allegedly lower, cost;

(3) double billing by World for "makereadies";

(4) double billing by World for "brownlines";

(5) overcharging by World for the cost of collating inserts; and

(6) overcharging by World for labor increases.

## DISCUSSION

■ The object of Rule 9(b) is to provide an individual charged with fraud with adequate notice of the claims against him, to protect him against baseless accusations of fraud, and to prevent strike suits. To accomplish these purposes, Rule 9(b) precludes a "shotgun" approach to an allegation of fraud, and requires that "the circumstances constituting fraud ... shall be stated with particularity." Although scienter may be averred generally, the complaint must allege sufficient facts from which knowledge may be inferred. Rule 9(b) must, of course, be read together with Rule 8(a) which calls for "short and plain statement[s] of claims for relief." C. Wright and A. Miller, *Federal Practice and Procedure*, § 1298 (1969).

Although the amended complaint points to areas of alleged misrepresentations and omissions, with minor exceptions it fails to state precisely what statements were made, to whom they were made, the date, time or place of their making, in what documents the statements were contained, or the World employee(s) who made them.

Therefore, it does not satisfy Rule 9(b) particularity requirements. *Equitable Life Assurance Soc'y v. Alexander Grant & Co.*, 627 F.Supp. 1023, 1029–30 (S.D.N.Y. 1985).

### Count Two

Paragraph 17 of count two, for example, states that World's alleged misrepresentations were included in "multiple communications and invoices" and in "various conversations" made by "World" to "Publisher." In similar fashion, paragraph 23 of count two states that World "knowingly charged Publisher excessive prices which resulted in extraordinary profits" for World. As another example, paragraph 29 of count two alleges that "World concealed [the true capabilities of World's collating equipment] from Publisher" and that "World falsely told Publisher that it had insufficient experience to evaluate the actual capabilities of the equipment." Not stated in any of these examples is who at World made the allegedly false representation, to whom it was made, and why the statement was false.

Nor does the amended complaint give any facts as to how or why the employee(s) in question "knew or should have known that these representations were false" as asserted, for example, in count two, paragraphs 20(c), (d), 27(b), and 28(b). Although under Rule 9(b) scienter may be averred generally, the complaint must allege facts which support an inference of scienter. No facts supporting an inference of scienter are alleged in this amended complaint.

■ The plaintiffs assert that the amended complaint is sufficiently particular to meet Rule 9(b) requirements. They suggest that because the defendant, in response to discovery demands, produced documents which allegedly support counts two and three, the plaintiffs therefore must have fulfilled 9(b) notice requirements. That argument is fallacious. The mere fact that the defendant produced documents as part of discovery in a breach of

contract suit does not mean the defendant has received notice of the fraud allegations against it. In this Circuit, when alleging fraud, the complaint must give "each defendant notice of *precisely* what he is charged with." *Goldman v. Belden*, 754 F.2d 1059, 1069–1070 (2d Cir.1985) (emphasis added); *Bresson v. Thomson McKinnon Securities, Inc.*, 641 F.Supp. 338, 346 (S.D.N.Y. 1986). It is clear that count two fails to state with particularity under Rule 9(b) the precise nature of plaintiffs' complaint against World.

### Count Three

■ Nor have the plaintiffs met the Rule 9(b) particularity requirements for count three, which alleges violations of the Connecticut Unfair Trade Practices Act (CUTPA). The plaintiffs assert that Rule 9(b) does not apply to allegations premised on violations of the state statute. While state law governs substantive issues of state law raised in federal court, it is federal law which governs procedural issues of state law raised in federal court, and Rule 9(b) is a procedural rule. To the extent that fraud is being alleged under the rubric "deceptive trade practices," Rule 9(b) governs the pleading procedures.

Connecticut courts look to *FTC v. Sperry & Hutchinson Co.*, 405 U.S. 233, 244–45, 92 S.Ct. 898, 905–06, 31 L.Ed.2d 170 (1972) for assistance in determining what conduct CUTPA proscribes. Specifically, the inquiry is

(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness;

(2) whether it is immoral, unethical, oppressive, or unscrupulous;

(3) whether it causes substantial injury to consumers (or competitors or other businessmen).

*Mead v. Burns*, 199 Conn. 651, 664–65, 509 A.2d 11 (1986).

For a representation to be unlawfully deceptive under CUTPA, it is not necessary that the seller intended to deceive. *Bailey Employment Systems, Inc. v. Hahn*, 545 F.Supp. 62, 67 (D.Conn.1982), *aff'd* 723 F.2d 895 (2d Cir.1983); *Web Press Services Corp. v. New London Motors, Inc.*, 203 Conn. 342, 363, 525 A.2d 57 (1987). Thus, the CUTPA standard for deceptive or unfair trade practices is broader than the standard for common law fraud, which does require proof of intent or scienter. However, although fraudulent intent need not be proven to establish a violation of CUTPA, if fraudulent intent is being alleged under CUTPA in federal court, then the complaint must meet the particularity requirements of Rule 9(b).

A claim for unfair and deceptive trade practices under count three, which incorporates the same allegations as that for fraudulent overcharges under count two, is essentially an action sounding in fraud and must meet the provisions of Rule 9(b). For the reasons stated above, we find that the particularity requirements of Rule 9(b) have not been met for count three.

CONCLUSION

Because the first amended complaint fails to state with particularity the allegations of fraudulent overcharging under count two, and deceptive trade practices in violation of CUTPA in count three, the defendant World's motion to dismiss is granted, but with leave to replead within twenty days.

SO ORDERED.