David BURTON and Ora
Burton, Plaintiffs,

v.

R.J. REYNOLDS TOBACCO CO.
and The American Tobacco
Company, Defendants.

No. 94–2202–JWL.

United States District Court,
D. Kansas.

March 10, 1995.

Kenneth B. McClain, Gregory Leyh, Humphrey, Farrington & McClain, Independence, MO, for David Burton, Ora Burton.

Roger D. Stanton, Stinson, Mag & Fizzell, Overland Park, KS, Stanley D. Davis, John C. Noonan, Teresa L. Clark, Stinson, Mag & Fizzell, Kansas City, MO, Sydney Bosworth McDole, William E. Marple, Jones, Day, Reavis & Pogue, Dallas, TX for R.J. Reynolds Tobacco Co.

Roger W. Warren, James D. Griffin, James M. Warden, Blackwell, Sanders, Matheny, Weary & Lombardi, Overland Park, KS, Bruce G. Sheffler, James Mirro, Chadbourne & Parke, New York City, for The American Tobacco Co.

### *MEMORANDUM AND ORDER*

LUNGSTRUM, District Judge.

*I. Introduction*

Plaintiffs David Burton and Ora Burton filed this lawsuit on May 25, 1994, and later filed an amended complaint against defendants R.J. Reynolds Tobacco Company and The American Tobacco Company. Plaintiff[1] alleges numerous claims, including fraud and

---

1. Because the liability claims in this case are asserted only by plaintiff David Burton, the court will refer throughout this opinion to "plaintiff" in the singular.

misrepresentation, negligence, strict liability, breach of express warranty, conspiracy and violation of consumer protection statutes.

The matter is currently before the court on two motions filed by the defendants. The first of these is defendants' joint motion to dismiss and for judgment on the pleadings (Docs. # 52–1 and 52–2). In their joint motion to dismiss, the defendants argue that, pursuant to Rules 12(b)(6) and 12(c) of the Federal Rules of Procedure, the court should dismiss Counts 1–5 and 7–11 with prejudice because they are deficient as a matter of law. The defendants advance a number of theories, chief among these that a majority of plaintiff's claims are pre-empted by the Federal Cigarette Labeling and Advertising Act and that plaintiff's strict liability claims fail to state a claim under the Restatement (Second) of Torts Section 402A. The defendants also contend that Kansas has not adopted "medical monitoring" as a separate tort claim and that, in any event, the doctrine is not applicable to Mr. Burton because his injury has already manifested itself. Finally, the defendants contend that plaintiff's pre-July 1, 1991 Kansas Consumer Protection Act claims fail because, prior to that time, the Act excluded claims for personal injury.

For the reasons set forth below, the court finds that defendants' joint motion to dismiss and for judgment on the pleadings should be granted in part and denied in part. The motion is granted on plaintiff's failure to warn claims contained in Counts 2, 3 and 4 to the extent those claims require a showing that the defendants' post–1969 advertising or promotions should have included additional, or more clearly stated, warnings. The motion is also granted on plaintiff's medical monitoring claim and on plaintiff's KCPA claim.[2] As to Ora Burton's claim for loss of consortium, her claim fails to the extent that the claims of David Burton fail.

Also before the court is defendants' joint motion for summary judgment (Doc. # 50). In their motion, the defendants contend that they are entitled to summary judgment on a number of plaintiff's claims under a variety of theories. For the reasons set forth below, defendants' joint motion for summary judgment is granted in part and denied in part. The motion is granted on plaintiff's express warranty claim contained in Count 6 of his amended complaint and on plaintiff's fraudulent misrepresentation claims to the extent they rely on express affirmations by defendants. The motion is denied on plaintiff's remaining claims.

## II. Factual Background

From approximately 1950 to 1993, plaintiff David Burton purchased and smoked Camel cigarettes, manufactured and sold by defendant RJR, and Lucky Strike cigarettes, manufactured and sold by defendant American Tobacco. Plaintiff contends that as a direct and proximate result of the use of defendants' products, he developed peripheral vascular disease. As a result of the disease, plaintiff underwent a series of operations in 1993 and 1994 which resulted in the amputation of both of his legs.

Plaintiff's amended complaint contains eleven separate counts. Count 1 is a strict liability claim in which plaintiff contends that the cigarettes placed in the stream of commerce by the defendants were dangerous to an extent beyond what would be contemplated by ordinary consumers and were in an unsafe and defective condition. Count 2 is a strict liability claim in which plaintiff contends defendants failed to give adequate warnings. Count 3 is a negligence claim in which plaintiff contends defendants breached duties regarding testing, research, sale, promotion, advertising and warnings. Count 4 is a negligence claim in which plaintiff contends that the defendants were negligent in the manner in which they advertised their cigarette products in that the warnings that were given regarding the adverse health consequences of smoking were neutralized and rendered ineffective. Count 5 is a strict liability claim in which plaintiff contends that the cigarettes were defective as a result of the cigarettes causing addiction and dependency, therefore rendering any warning

---

**2.** Plaintiff has leave to amend on the KCPA claim. If the complaint is not amended within ten days following the entry of this order, the claim will be dismissed with prejudice for failure to state a claim.

meaningless. Count 6 is an express warranty claim in which plaintiff contends that certain statements and advertisements made by the defendants constituted express warranties that the cigarettes did not present any significant health problems. Count 7 is a misrepresentation and concealment claim in which plaintiff contends that the defendants knew that use of their products caused cancer and vasculatory disease, yet willfully chose to conceal those facts from the public. Count 8 is a conspiracy count in which plaintiff contends the defendants ignored and failed to act upon pertinent medical and scientific data and conspired to deprive the public, and particularly the consumers of defendants' products, of the pertinent medical and scientific data. Count 9 is a loss of consortium claim which is brought by plaintiff Ora Burton. Count 10 is a "medical monitoring" claim in which plaintiff seeks to recover damages for ongoing medical surveillance regarding his medical disabilities. Finally, Count 11 is brought under the Kansas Consumer Protection Act ("KCPA") and alleges that the defendants engaged in deceptive sales practices.

*III. Discussion*

*A. Defendants' Joint Motion to Dismiss and for Judgment on the Pleadings*

■ In their joint motion to dismiss and for judgment on the pleadings, defendants ask this court to enter an order pursuant to Rules 12(b)(6) and 12(c) dismissing Counts 1–5 and 7–11 on the grounds that those counts fail to state a claim upon which relief can be granted. A court may not dismiss a cause of action for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of the theory of recovery that would entitle him or her to relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957); *Jacobs, Visconsi & Jacobs, Co. v. City of Lawrence,* 927 F.2d 1111, 1115 (10th Cir. 1991). The pleadings are liberally construed, and all reasonable inferences are viewed in favor of the plaintiff. Fed.R.Civ.P. 8(a); *Lafoy v. HMO Colorado,* 988 F.2d 97, 98 (10th Cir.1993). "All well-pleaded facts, as distinguished from conclusory allegations, must be taken as true." *Swanson v. Bixler,* 750 F.2d 810, 813 (10th Cir.1984). The issue in resolving a motion such as this is not whether the plaintiff will ultimately prevail, but whether he or she is entitled to offer evidence to support the claims. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

The main thrust of defendants' argument is that a majority of plaintiff's claims are preempted by the Federal Cigarette Labeling and Advertising Act. The issue of pre-emption under the Federal Cigarette Labeling and Advertising Act of 1965, as amended by the Public Health Cigarette Smoking Act of 1969, 15 U.S.C. §§ 1331–1340, was addressed by the United States Supreme Court in *Cipollone v. Liggett Group, Inc.,* —— U.S. ——, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992).

In 1965, Congress enacted the Federal Cigarette Labeling and Advertising Act (the "Act"). Section 2 of the Act declared its purposes, which were to adequately inform the public that cigarette smoking may be hazardous to one's health and to protect the national economy from the burden imposed by diverse, nonuniform and confusing cigarette labeling and advertising regulations. Section 4 of the Act required a conspicuous label warning of smoking's health hazards to be placed on every package of cigarettes sold in this country, while Section 5 of the Act, captioned "Preemption," provided: "(a) No statement relating to smoking and health, other than the [§ 4] statement . . ., shall be required on any cigarette package," and "(b) No [such] statement . . . shall be required in the advertising of any cigarettes the packages of which are labeled in conformity with" § 4. Section 5(b) was amended by the Public Health Cigarette Smoking Act of 1969 (the "1969 Act") to specify: "No requirement or prohibition based on smoking and health shall be imposed under State law with respect to the advertising or promotion of any cigarettes the packages of which are [lawfully] labeled."

In *Cipollone,* the plaintiff asserted that the defendant cigarette manufacturers were responsible for the death of his mother, a longtime smoker, because they breached express warranties contained in their advertising,

failed to warn consumers about smoking's hazards, fraudulently misrepresented those hazards to consumers, and conspired to deprive the public of medical and scientific information about smoking, all in derogation of duties created by New Jersey law. *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2613. The question before the *Cipollone* court was whether the 1969 Act, or its 1965 predecessor, pre-empted plaintiff's common law claims against the defendant cigarette manufacturers.

The court concluded that the pre-emptive scope of the 1965 Act and the 1969 Act was governed entirely by the express language contained in Section 5 of each Act. The court further found that because the Acts each contained a provision defining the scope of the pre-emptory effect of that Act, those provisions must be construed narrowly and matters beyond their reach were not pre-empted. *Id.* at ——, 112 S.Ct. at 2618. The court also concluded that Section 5 of the 1965 Act did not pre-empt state law damages actions, but superseded only positive enactments by state and federal rulemaking bodies mandating particular warnings on cigarette labels or in cigarette advertisements. *Id.* However, in analyzing the 1969 Act, the court found that the broad language of amended Section 5(b) extended the section's pre-emptive reach beyond positive enactments to include some, but not all, common law damages actions. The court found it necessary to look beyond the labels attached to plaintiff's claims in order to decide whether they were pre-empted. In order to decide whether any claim was pre-empted, the court asked "whether the legal duty that is the predicate of the common law damages action constitutes a 'requirement or prohibition based on smoking and health ... imposed under State law with respect to ... advertising or promotion,'· giving that clause a fair but narrow reading." *Id.* at ——, 112 S.Ct. at 2621.

The *Cipollone* court then proceeded to analyze the pre-emptive effect of the Acts on each of plaintiff's claims. The court concluded that claims under either of plaintiff's failure to warn theories [3] were pre-empted to the extent that they relied on a state law "requirement or prohibition ... with respect to ... advertising or promotion." *Id.* Thus, the court found that insofar as claims under either failure to warn theory required a showing that the defendant cigarette manufacturer's post–1969 advertising or promotions should have included additional, or more clearly stated, warnings, those claims were pre-empted. *Id.* However, the court also held that the Act did not pre-empt plaintiffs' claims that relied solely on testing or research practices or other actions unrelated to advertising or promotion. *Id.* at ——, 112 S.Ct. at 2622.

The court next analyzed plaintiff's misrepresentation claims. The court found that plaintiff's first fraudulent misrepresentation theory, which was predicated on a state law prohibition against advertising and promotional statements tending to minimize smoking's health hazards, and which alleged that the manufacturers' advertising neutralized the effect of the federally mandated warning labels, was pre-empted because it was inextricably linked to plaintiff's failure to warn theory. However, the court found that plaintiff's second fraudulent misrepresentation theory, which alleged intentional fraud both by false representation and concealment of material facts, was not pre-empted. The court found that the concealment allegations, insofar as they relied on a state law duty to disclose material facts through channels of communication other than advertising and promotions, did not involve an obligation "with respect to" those activities within Section 5(b)'s meaning. Moreover, the court found those fraudulent misrepresentation claims that did arise with respect to advertising and promotions were not predicated on· a duty "based on smoking and health" but rather on a more general obligation—the duty not to deceive. *Id.* at ———–———, 112 S.Ct. at 2623–2624.

**3.** Plaintiff had two different theories and claims relating to failure to warn. The first of these was that the defendant cigarette manufacturers were negligent in the manner that they tested, researched, sold, promoted, and advertised their cigarettes. *Cipollone,* —— U.S. at ——, 112 S.Ct. at 2621. The second was that the defendant cigarette manufacturers failed to provide "adequate warnings of the health consequences of cigarette smoking." *Id.*

Finally, the court found that plaintiff's claim alleging a conspiracy among the manufacturers to misrepresent or conceal material facts concerning smoking's health hazards was not pre-empted, since the predicate duty not to conspire to commit fraud that underlies that claim was not a prohibition "based on smoking and health," as that Section 5(b) phrase was properly construed. *Id.* at ——, 112 S.Ct. at 2624. The court also found that plaintiff's claim for breach of express warranties was not pre-empted. *Id.* at —— – ——, 112 S.Ct. at 2622–23.

■ In the present case, the defendants contend that Counts 2, 3 and 4 of plaintiff's amended complaint, which all involve claims that the defendants failed to warn him of health risks associated with cigarettes, are pre-empted by the 1969 Act. In his response, plaintiff agrees that Counts 2 and 3, which relate to defendants' failure to warn, and Count 4, which relates to the neutralization of warnings, are pre-empted as to activities after 1969. However, plaintiff points out that those claims also allege injuries resulting from the defendants' failure to warn and neutralization of warnings before that date. Accordingly, based on *Cipollone,* the court finds that those portions of Counts 2, 3 and 4 that are based on activities by the defendants that occurred after the effective date of the 1969 Act are pre-empted and should therefore be dismissed. However, those portions of Counts 2, 3 and 4 that are based on defendants' activities prior to the effective date of the 1969 Act remain in the case.

■ Defendants also argue that Counts 7, 8 and 11 of the plaintiff's amended complaint are simply variations on the theory that defendants failed to warn of the health risks associated with cigarettes, and therefore also should be pre-empted as to activities subsequent to the effective date of the 1969 Act.

The court does not agree. Count 7 is a misrepresentation and concealment claim in which plaintiff contends that the defendants knew that use of their products caused cancer and vasculatory disease, yet willfully chose to conceal those facts from the public. Count 8 is a conspiracy count in which plaintiff contends that the defendants ignored and failed to act upon pertinent medical and scientific data and conspired to deprive the public, and particularly the consumers of defendants' products, of the pertinent medical and scientific data. Count 11 is brought under the KCPA and alleges that the defendants engaged in deceptive sales practices.

*Cipollone* distinguished claims requiring a showing that cigarette manufacturers' post–1969 advertising or promotions should have included additional, or more clearly stated, warnings, which the court found to be pre-empted, from claims of fraudulent misrepresentation and conspiracy, holding that those claims were not pre-empted, even as they related to defendant's advertising and promotion, because "such claims are not predicated on a duty 'based on smoking and health' but rather on a more general obligation—the duty not to deceive." *Cipollone,* —— U.S. at —— – ——, 112 S.Ct. at 2623–24; *see also Castano v. American Tobacco Co.,* 870 F.Supp. 1425, 1432–33 (E.D.La.1994). Accordingly, based upon this court's reading of *Cipollone,* the court finds that Counts 7, 8 and 11 of plaintiff's complaint, which allege fraudulent concealment, conspiracy to commit fraud, and violation of the KCPA for deceptive advertising practices, are not necessarily pre-empted by the 1969 Act, and therefore defendants' motion to dismiss those counts on pre-emption grounds is denied.[4]

Defendants next contend that Counts 1 and 5 of plaintiff's amended complaint,[5] which are based on strict liability in tort for manufacture of a defective product, should be

---

4. In reaching this conclusion the court finds merely that, based on the *Cipollone* ruling, it is possible that plaintiff can assert viable claims under each of the theories advanced in Counts 7, 8 and 11. Whether such claims ultimately will survive to trial will depend on the particulars of Kansas law regarding fraudulent misrepresentation and concealment.

5. Count 1 is a strict liability claim in which plaintiffs contend that the cigarettes placed in the stream of commerce by the defendants were dangerous to an extent beyond what would be contemplated by ordinary consumers and were in an unsafe and defective condition. Count 5 is a strict liability claim in which plaintiffs contend that the cigarettes were defective as a result of the cigarettes causing addiction and dependency, therefore rendering any warning meaningless.

dismissed because they are barred by Section 402A of the Restatement (Second) of Torts, Comment i. The Kansas Supreme Court has expressly adopted Section 402A and Comment i thereto. *See Lester v. Magic Chef, Inc.,* 230 Kan. 643, 641 P.2d 353, 361 (1982). Section 402A creates liability for physical injury caused by a product "in a defective condition unreasonably dangerous to the user." Kansas law is clear that the product must be both "defective" and "unreasonably dangerous." *Wheeler v. John Deere Co.,* 935 F.2d 1090, 1102 (10th Cir.1991). Under Comment i, a product is not unreasonably dangerous unless it is "dangerous to an extent beyond that which would be contemplated by the ordinary consumer who purchases it, with the ordinary knowledge common to the community as to its characteristics." Comment i expressly limits liability with respect to certain categories of products, including "good whiskey," "good tobacco," and "good butter." The comment illustrates with the example that "[g]ood tobacco is not unreasonably dangerous merely because the effects of smoking may be harmful: but tobacco containing something like marijuana may be unreasonably dangerous." Defendants contend that plaintiff has not alleged that defendants' cigarettes were anything but "good tobacco" under Comment i, and, accordingly, defendants' cigarettes are neither "defective" nor "unreasonably dangerous" under Section 402A as a matter of law.

■ The court does not find the preclusionary effect of Comment i to be as broad as defendants contend. The court finds that the reference in Comment i to tobacco to illustrate the operation of the consumer expectations principle does not, as a matter of law, remove all claims of defective tobacco products from the operation of Section 402A. Although "good tobacco," without any additives or foreign substances, may not be unreasonably dangerous, that does not automatically mean that all tobacco-containing products are not unreasonably dangerous. The cigarettes sold by defendants are manufactured products and, as such, the court finds that they are subject to design, packaging, and manufacturing variations which may render them defective even if the tobacco

used in their manufacture was initially unadulterated. *Accord, Grinnell v. American Tobacco Co., Inc.,* 883 S.W.2d 791, 799 (Tex. App.—Beaumont 1994); *Rogers v. R.J. Reynolds Tobacco Co.,* 557 N.E.2d 1045, 1053 (Ind.App. 2 Dist.1990). Accordingly, the court finds that plaintiff's strict liability claims are not necessarily barred under Section 402A and defendants' motion to dismiss as to those claims is therefore denied.

■ Defendants make an additional argument that plaintiff's strict liability claims should be dismissed because plaintiff merely attacks cigarettes generically and fails to allege a specific defect. The court agrees that under Kansas law, as to plaintiff's claim of design defect, it will be necessary for plaintiff to specifically identify what aspect of defendants' products was defectively designed. *See Jenkins v. Amchem Products, Inc.,* 256 Kan. 602, 886 P.2d 869, 890 (1994). However, because the plaintiff has not yet been allowed to conduct discovery to flesh out the specifics of his design defect claim, the court believes that it would be premature to dismiss plaintiff's strict liability design defect claims at this point in the litigation.

Defendants next contend that Count 10 of plaintiff's amended complaint, which alleges a claim for "medical monitoring," should be dismissed because Kansas has not adopted a separate tort action for "medical monitoring" and, even if Kansas had adopted it, such a claim would not apply under the facts of the present case. As pled by plaintiff, Count 10 merely states that, as a result of his use of the defendants' defective products, plaintiff has required surgical operations to amputate both legs above the knee, and his resulting condition requires periodic medical surveillance to ascertain the extent of any medical disability or infirmity arising from the operations or from any disease caused by the defendants' products.

■ The tort theory of medical monitoring is one of a growing number of non-traditional torts that have developed in the common law to compensate plaintiffs who have been exposed to various toxic substances. *See In re Paoli R.R. Yard PCB Litigation,* 916 F.2d 829, 849 (3rd Cir.1990). Medical monitoring

can allow plaintiffs some relief even absent present manifestations of physical injury. *Id.* at 850. In the toxic tort context, courts have allowed plaintiffs to recover for emotional distress suffered because of the fear of contracting a toxic exposure disease, the increased risk of future harm, and the reasonable costs of medical monitoring or surveillance. *Id.* (citing cases from other jurisdictions). Other courts have failed to recognize claims for medical monitoring. *See Ball v. Joy Technologies, Inc.,* 958 F.2d 36, 39 (4th Cir.1991) (a claim for medical surveillance costs is simply a claim for future damages which, under West Virginia law, is available only where a plaintiff has sustained a physical injury that was proximately caused by defendant).

█ Based upon the arguments contained in plaintiff's response, the court finds that plaintiff's "medical monitoring" claim does not properly state a separate claim, rather it is merely a component of plaintiff's damages relating to his other claims. In his response, plaintiff asserts that "numerous Kansas cases both recognize and allow recovery for medical monitoring where the plaintiff has sustained injury." As an example, the plaintiff cites *Cott v. Peppermint Twist Management Co., Inc.,* 253 Kan. 452, 856 P.2d 906 (1993). In *Cott,* the plaintiffs sustained injuries when they drank dishwashing detergent that had mistakenly been served to them at defendant's bar. Both plaintiffs received very large damage awards that included damages for mental distress based on a fear of an increased risk of cancer, necessary future check-ups and monitoring, and also for future surgeries which plaintiffs could conceivably, but not necessarily, need as a result of their injuries from consuming the dishwashing liquid. The defendant appealed on the basis that the damages were too speculative or conjectural to form a basis for measurement. The court disagreed, finding that the anxiety based upon a reasonable fear that an existing injury will lead to the occurrence of a disease

or condition in the future is an element of mental distress for which damages may be recovered, and that the jury's award for medical expenses had a reasonable basis for computation and was not based upon mere speculation. *Id.* at 466, 856 P.2d 906.

In his response, plaintiff notes that the medical experts in *Cott* testified that one of the *Cott* plaintiffs would need to be examined annually for cancer and for other physical conditions every three months for the rest of his life. Plaintiff then states that his amended complaint "similarly alleges that his physical condition requires periodic medical surveillance to ascertain the extent of any medical disability or infirmity arising from his injury." Accordingly, it appears to the court from plaintiff's response that he is merely asking for damages for necessary medical surveillance arising from his peripheral vascular disease. Because these damages would be allowed under plaintiff's other claims as per *Cott,* and would not constitute a separate medical monitoring tort claim,[6] defendant's motion to dismiss Count 10 of plaintiff's amended complaint is granted.

Defendants next contend that plaintiff's claim under the Kansas Consumer Protection Act ("KCPA") should be dismissed for a variety of reasons. In Count 11 of his amended complaint, plaintiff alleges personal injury as a result of violations of the KCPA (K.S.A. § 50–623 *et seq.*). The substance of this Count is contained in paragraph 59 of the amended complaint, which alleges that: (a) RJR and American represented that their respective cigarettes were of a particular standard, grade or quality; (b) RJR and American willfully engaged in exaggeration and falsehood as to material facts relating to the healthfulness of Camel and Lucky Strike cigarettes; and (c) RJR and American failed to state or willfully concealed material facts regarding the health hazards caused by cigarette smoking.

---

6. Unlike the damages in *Cott,* which, although arguably speculative, arose from an existing injury, a separate tort action for medical monitoring arises in an instance where a plaintiff has been exposed to hazardous materials, which may increase his or her susceptibility to contracting a latent disease, but the plaintiff has not yet suffered any injuries. Thus, to the extent plaintiff seeks future medical monitoring costs related to his peripheral vascular disease, he does not have a separate medical monitoring claim but rather a damage claim as recognized in *Cott.*

■ Defendants first argue, and plaintiff does not disagree, that only those acts or omissions of defendants allegedly occurring on or after July 1, 1991 may be the subject of liability under the KCPA. This is because prior to an amendment which became effective July 1, 1991, the KCPA provided that it did not apply to any claim for personal injury or death. *See* K.S.A. § 50–635. Accordingly, the court finds that the KCPA does not apply to actions of defendants causing personal injury that occurred prior to the amendment.

■ Defendants next argue that those portions of plaintiff's KCPA claim that rely on affirmative misrepresentations by the defendants should be dismissed because the defendants did not engage in any advertisement of Camel or Lucky Strike cigarettes in Kansas after July 1, 1991.[7] Plaintiff does not dispute defendants' contention that they did not advertise the cigarettes plaintiff complains of after July 1, 1991. Accordingly, because it is undisputed that no advertising of the cigarettes plaintiff complains of occurred after the date when Kansas recognized personal injury actions under the KCPA, plaintiff's KCPA claim is dismissed to the extent it relies on affirmative affirmations made by defendants.

Defendants next argue that the remaining portion of plaintiff's KCPA claim, which is based on omissions and concealment of material facts, fails because it is not pled with particularity as required by Fed.R.Civ.P. 9(b). Fed.R.Civ.P. 9(b) states: "In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Plaintiff contends that an action for violation of the KCPA is not the same as an action for fraud and therefore Rule 9(b) does not apply.

■ Neither the Kansas courts nor the federal courts in this district have addressed the issue of whether Rule 9(b) should apply to allegations of deceptive trade practices under the KCPA. An examination of the Act reveals that claims under the Act are not precisely actions for fraud, however Kansas courts have recognized that the actions upon which a consumer may establish liability under ·the Act sound largely in fraud. *See Haag v. Dry Basement, Inc.* 11 Kan.App.2d 649, 650, 732 P.2d 392 (1987) (although the actions upon which a consumer may establish liability under the KCPA sound largely in fraud, a critical element of a common-law fraud action, the intent to defraud, need not be proven).

■ This court is persuaded that allegations of deceptive trade practices under the KCPA are subject to Rule 9(b)'s requirement of particularity.[8] The elements of an action under the KCPA are identical to fraud actions except for the intent requirement. Thus, the policy reasons for requiring fraud actions to be pled with particularity would apply equally to actions brought under the KCPA. Additionally, other claims which are not precisely actions for fraud, but are based on fraud, are required to be pled with particularity. *See Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982, 989 (10th Cir. 1992) (RICO); *In re GlenFed, Inc. Securities Litigation,* 42 F.3d 1541 (9th Cir.1994) (Rule 10b–5 securities actions).

■ Therefore, plaintiff's KCPA concealment claim will be dismissed for failure to comply with Rule 9(b). Because this court does not wish to deny the plaintiff his day in court on this claim, if there really is a claim, the plaintiff has leave to amend his complaint on the KCPA claim to allege the violations with particularity. If the complaint is not amended within ten days following the entry of this order, the claim will be dismissed with prejudice for failure to state a claim.

---

7. In support of this argument, defendants have submitted affidavits of corporate officers of each defendant averring that no advertising of Camel regular or Lucky Strike cigarettes in print media, on billboards, or on radio or television occurred after July 1, 1991.

8. Our decision here concurs with other jurisdictions that have held that Rule 9(b) applies to actions under consumer acts similar to the KCPA. *See NCC Sunday Inserts, Inc. v. World Color Press, Inc.,* 692 F.Supp. 327, 330 (S.D.N.Y. 1988) (Connecticut consumer protection statute); *Duran v. Clover Club Foods Co.,* 616 F.Supp. 790, 793 (D.Colo.1985) (Colorado consumer protection statute).

### B. Defendants' Joint Motion for Summary Judgment

In their joint motion for summary judgment, defendants contend that they are entitled to summary judgment on plaintiff's failure to warn and concealment claims because there is no genuine issue of material fact in that the health risks of smoking were and are commonly known, and plaintiff was aware of these risks at the time he began to smoke. Defendants further contend they are entitled to summary judgment because any alleged failure to warn by defendants was not the proximate cause of plaintiff's injuries. Defendants further contend that they are entitled to summary judgment on plaintiff's express warranty and misrepresentation claims because there is no genuine issue of material fact in that plaintiff cannot establish a warranty or misrepresentation by defendants, plaintiff did not reasonably rely on any purported warranty or misrepresentation, and there is no causal link between any purported warranty or representation and plaintiff's injuries.

■ Summary judgment is appropriate if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Anthony v. United States,* 987 F.2d 670, 672 (10th Cir.1993). The court views the evidence and draws any inferences in a light most favorable to the party opposing summary judgment, but that party must identify sufficient evidence which would require submission of the case to a jury. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–52, 106 S.Ct. 2505, 2510–12, 91 L.Ed.2d 202 (1986); *Hall v. Bellmon,* 935 F.2d 1106, 1111 (10th Cir.1991). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. *Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 533 (10th Cir.1994) (citing *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11). The relevant inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter

of law." *Anderson,* 477 U.S. at 251–52, 106 S.Ct. at 2512.

Defendants first argue that plaintiff's failure to warn and concealment claims fail because the common knowledge of the health risks of cigarettes has been recognized as a matter of law in Kansas. In support of their argument, defendants note that the Kansas Supreme Court has expressly adopted Section 402A of the Restatement (Second) of Torts, including Comment i thereto. Defendants then contend that "if the risks of smoking cigarettes are commonly known for purposes of liability under a strict liability theory, these risks must be commonly known for purposes of liability under a failure to warn or concealment theory." [9] Defendants then contend that a 1920 opinion issued by the Supreme Court of Kansas, which recognized that the dangers of smoking and the deleterious effects of cigarettes were known, serves as further proof of the common knowledge of the health risks of cigarettes. *See State v. Nossaman,* 107 Kan. 715, 193 P. 347, 348 (1920). Defendants also cite opinions from other jurisdictions in which the courts dismissed claims by plaintiffs on the grounds that the dangers posed by tobacco smoking had long been within the ordinary knowledge common to the community. *See Roysdon v. R.J. Reynolds Tobacco Co.,* 849 F.2d 230 (6th Cir.1988); *Paugh v. R.J. Reynolds Tobacco Co.,* 834 F.Supp. 228 (N.D.Ohio 1993).

■ The court does not agree with defendants' contention that there "cannot be any genuine issue of material fact that the risks associated with smoking cigarettes are common knowledge." Plaintiff's failure to warn claims cover the period of time from when plaintiff began smoking in 1954 up until the effective date of the 1969 Act. Furthermore, plaintiff's misrepresentation and concealment claims cover the entire period from when plaintiff began smoking until the time he suffered his injuries. Plaintiff has alleged varying theories of recovery, including ones based on the addictive qualities of cigarettes, and has presented evidence of knowledge by defendants of the addictive nature of cigarettes and even some evidence that defen-

9. As discussed earlier in this opinion, the court does not agree with defendants' contention that Comment i necessarily bars plaintiff's strict liability claims.

dants purposefully manipulated their products to increase the addictive qualities. Defendants would have the court find, as a matter of law, that because there is general common knowledge that cigarettes are dangerous, users of cigarettes are therefore imputed with knowledge of the extent and nature of all dangers relating to cigarettes. The court does not agree that such a finding is necessarily warranted. As the court stated in *Rogers v. R.J. Reynolds Tobacco Co.,* 557 N.E.2d 1045, 1054 (Ind.App.1990) "[t]here is no basis for our judicially noticing what the ordinary consumer's knowledge concerning the addictive qualities of cigarettes may have been when [plaintiff] began smoking in 1940. The state of knowledge attributable to the community of individuals consuming cigarettes has changed over time and will continue to do so. It was not until 1988 that the Surgeon General published a report informing of the addictive nature of cigarettes." Indeed, as the court noted in *Castano v. The American Tobacco Co.,* 870 F.Supp. 1425, 1433 (E.D.La.1994), in hearings before Congress on April 14, 1994, the chief executive officers of the major tobacco manufacturers in this country testified before Congress and the country that nicotine is not addictive.[10] It is interesting that in the context of defending this lawsuit defendants contend that the dangerous properties of cigarettes are common knowledge, while less than one year ago they testified in front of Congress that certain claimed dangerous propensities of their products did not exist at all.

Defendants next contend that they are entitled to summary judgment because, in addition to the general common knowledge about the dangerousness of cigarettes, plaintiff also had personal knowledge of the grave risks associated with cigarettes before he started smoking. In support of their argument, defendants point to excerpts from depositions they have taken of Mr. Burton in this case. The gravamen of defendants' arguments are statements by plaintiff that he was aware that cigarettes could cause shortness of breath, that they could cause cancer, and

that one could die from the use of cigarettes. Defendants also point to testimony wherein defendant admitted that he "knew better" than to start smoking, that this knowledge came from his high school track coaches who told him not to smoke because it could "cause shortness of breath," and also from his mother, who indicated disapproval when she first saw him smoking because it was "bad for you."

■ The court finds that these admissions made by plaintiff in his deposition do not entitle defendants to summary judgment for the same reasons that their common knowledge argument fails. The mere fact that plaintiff "knew better" than to start smoking, that he knew smoking was "bad for you," and even that he believed cigarettes could cause cancer and even kill him is certainly relevant to the reasonableness of his decision to begin smoking in the first place. Also, knowledge that he possessed is relevant to the issue of whether additional warnings were, in fact, needed or would have been heeded by plaintiff. The admissions, however, do not operate to fully insulate defendants from liability for failure to warn. At this stage of the case, before any discovery has taken place by the plaintiff, it is not yet apparent what knowledge was possessed by the defendants at relevant time periods which bear on the duty to warn, or what the content of appropriate warnings might have been. Further, as pertains to plaintiff's misrepresentation and concealment claims, it is not yet known if defendants were in possession of superior knowledge than was available to plaintiff and whether, under Kansas law, defendants had an obligation to disseminate that knowledge to plaintiff and other similarly situated users of their products. The mere fact that plaintiff was aware of some dangers relating to the use of cigarettes does not necessarily automatically insulate defendants from warning of other dangers of which plaintiff may have been unaware.

10. Similarly, Philip Morris thereafter purchased full-page newspaper advertisements which read in part: "Philip Morris does not believe cigarette

smoking is addictive." *Castano,* 870 F.Supp. at 1433.

Defendants next contend that because plaintiff disregarded health warnings, regardless of content and source, defendants' alleged failure to warn and concealment were not the proximate cause of his injuries. Defendants contend that, given plaintiff's failure to heed the health warnings that were placed on every package of cigarettes he smoked after 1965, and his failure to heed the warnings given to him by his track coaches and mother before he started smoking, there is no reasonable basis to believe that plaintiff would have heeded any other warnings that might have been given by defendants.

■ The court believes that a ruling such as defendants propose would be premature at this point in the case. Since plaintiff has not yet taken any discovery, it is not known at this point what proposed additional warnings, if any, may have been proper. Further, it is not known whether defendants concealed any information which should have been communicated to plaintiff under Kansas law. Granted, the fact that plaintiff failed to heed any of the warnings that were given to him is strong evidence that additional warnings would not have been effective. However, without even knowing what those additional warnings might have been, this court is loathe to rule as a matter of law that additional warnings or information would not have been heeded by plaintiff. In fact, if it is determined that additional warnings were necessary, and plaintiff asserts that additional warnings would have been heeded (which he did in his deposition), such a determination is most probably a fact question to be determined by the jury.

Defendants next argue that summary judgment should be granted on plaintiff's breach of express warranty and fraudulent misrepresentation claims because defendants made no misrepresentations to plaintiff and he did not rely on any such misrepresentations. The court agrees with the defendants that plaintiff has failed to show any express affirmations by the defendants that would be actionable.

■ The Kansas Supreme Court has stated that "in order to constitute an express warranty, no particular language is necessary. It need not be in writing or be made in specific terms and the word 'warrant' or 'warranty' need not be used." *Corral v. Rollins Protective Services Co.*, 240 Kan. 678, 685, 732 P.2d 1260 (1987). The *Rollins* court clarified the requirements for an express warranty by stating that "[i]t is clear that for there to be an express warranty there must be an explicit statement, written or oral, by the party to be bound" *Id.* Similarly, the court in *Topeka Mill & Elevator Co. v. Triplett*, 168 Kan. 428, 435, 213 P.2d 964 (1950) stated that "[i]n order for an express warranty to exist, there must be something positive and unequivocal concerning the thing sold, ... which is understood by the parties as an absolute assertion concerning the thing sold." Kansas law recognizes that advertisements may be the basis of an express warranty. *See Scheuler v. Aamco Transmissions, Inc.*, 1 Kan.App.2d 525, 571 P.2d 48 (1977).

In his amended complaint, plaintiff contends that the defendants expressly warranted that smoking Camel and Lucky Strike cigarettes "did not present any significant health consequences." Similarly, in his misrepresentation claims the plaintiff contends that defendants fraudulently misrepresented that smoking "did not present a health risk," that they conspired with others to do the same, and that they "willfully engaged in exaggerations and falsehood" as to "the healthfulness" of cigarettes.

■ The court has extensively reviewed the materials which plaintiff relies on in asserting his breach of express warranty and misrepresentation claims. These include some 33 print advertisements and a videotape consisting of 38 television commercials for Camel and Lucky Strike cigarettes. Simply put, the court finds that none of these materials contain representations of the kind complained of by plaintiff in his complaint. Granted, the advertisements do tend to portray smoking in a positive light, through the use of professional athletes, movie stars, and other attractive persons shown enjoying cigarettes. The advertisements also refer to the subject cigarettes variously as "mild" and "smooth." Indeed, the positive representation of smoking presented in the advertisements would be an inducement to purchase

the cigarettes, but such a result is the very purpose strived for in all advertising. The mere fact that smoking is portrayed in a positive manner does not, as plaintiff contends, lead to a conclusion that such advertisements expressly warrant that smoking "does not present any significant health consequences." In fact, health consequences are not discussed in any of the advertisements.[11] The closest thing to any discussion of health is an assertion in some of the advertisements that, according to tests, there was "Not one single case of throat irritation due to smoking Camels!" If plaintiff in this case were complaining of throat irritation, then he might indeed have a valid claim for breach of express warranty. However, such is not the basis of plaintiff's complaint in this case. Plaintiff is seeking damages for his contracting a serious condition on the basis that defendants expressly warranted that cigarettes did not present any significant health consequences. From the materials plaintiff has presented in the record, plaintiff has failed to produce any explicit statements or absolute assertions regarding the health consequences of smoking. Accordingly, plaintiff's express warranty claims, and misrepresentation claims to the extent they rely on express affirmations of fact, are dismissed. Accord, Semowich v. R.J. Reynolds Tobacco Co., 8 U.C.C. Rep.Serv.2d 976, 1988 WL 123930 (N.D.N.Y.1988); Kotler v. The American Tobacco Co., 731 F.Supp. 50 (D.Mass. 1990); Gunsalus v. Celotex Corp., 674 F.Supp. 1149 (E.D.Pa.1987).[12]

IV. Conclusion

**IT IS, THEREFORE, BY THE COURT ORDERED THAT** defendants' joint motion to dismiss and for judgment on the pleadings (Docs. # 52–1 and 52–2) is granted in part and denied in part.[13] The motion is granted on plaintiff's failure to warn claims contained in Counts 2, 3 and 4 to the extent those claims require a showing that the defendants' post–1969 advertising or promotions should have included additional, or more clearly stated, warnings. The motion is also granted on plaintiff's medical monitoring claim contained in Count 10 of plaintiff's amended complaint. The motion is also granted on Count 11, plaintiff's KCPA claim. Plaintiff has leave to amend his KCPA claim to plead with particularity his theory based on willful concealment of material facts regarding the health hazards of smoking. If the complaint is not amended within ten days following the entry of this order, the claim will be dismissed with prejudice for failure to state a claim. Additionally, the motion is granted on Ora Burton's loss of consortium claim to the extent the claims of plaintiff David Burton fail. The motion is denied on plaintiff's remaining claims.

**IT IS FURTHER ORDERED THAT** defendants' joint motion for summary judgment (Doc. # 50) is granted in part and denied in part. The motion is granted on plaintiff's express warranty claim contained in Count 6 of his amended complaint and on plaintiff's fraudulent misrepresentation claims to the extent they rely on express affirmations by defendants. The motion is denied as to plaintiff's remaining claims.

---

11. Plaintiff does not point to any explicit statements in any of the advertisements that deal with health consequences of smoking cigarettes. Instead, plaintiff relies on an affidavit by an expert witness in which the witness asserts that "[c]igarettes in general, and defendants' brands in specific, were made to seem healthful and/or innocuous by several means such as extensive repetition of mildness claims, more specific claims that smoking was not irritating, associations with athletes, the appearance of scientific evidence, the use of innocuous ad styles and placements (cartoons, carefree jingles, appearance in comics and on situation comedies), testimonials from famous users who trusted the brands, and other tactics."

12. In contrast, in Cipollone v. Liggett Group, Inc., 893 F.2d 541 (3rd Cir.1990), where plaintiff was allowed to proceed with his express warranty claim, the plaintiff had produced advertisements explicitly stating, among other things, there was "proof" that Chesterfield cigarettes "never ... did you any harm."

13. By agreement of the parties, plaintiff's motion for leave of court to file supplemental memorandum in opposition to defendants' joint motion to dismiss and for judgment on the pleadings (Doc. # 67) is granted.