Judith E. CHAMBERLAIN,
at al., Plaintiffs,

v.

The AMERICAN TOBACCO
COMPANY, INC., et
al., Defendants.

No. 1:96CV2005.

United States District Court,
N.D. Ohio,
Eastern Division.

April 12, 1999.

John R. Climaco, Jack D. Maistros, Climaco, Lefkowitz, Peca, Wilcox & Garofoli, Cleveland, OH, Stanley M. Chesley, Sherrill P. Hondorf, Waite, Schneider, Bayless & Chesley, Cincinnati, OH, John A. Sivinski, Michael Vincent Kelley, Kelley & Ferraro, Cleveland, OH, for plaintiffs.

Cecil Marlowe, Richard J. Cusick, Jr., Phillip J. Campanella, Calfee, Halter & Griswold, Cleveland, OH, Craig E. Gustafson, Gary R. Long, Shook, Hardy & Bacon, Kansas City, MO, Richard A. Schneider, King & Spalding, Atlanta, GA, for American Tobacco Company, Inc.

John Winship Read, Vorys, Sater, Seymour & Pease, Cleveland, OH, Frank C. Woodside, III, Mary Jo Middelhoff, Dinsmore & Shohl, Cincinnati, OH, Thomas D. Lambros, Bricker & Eckler, LLP, Columbus, OH, for American Brands, Inc.

Lloyd Pierre–Louis, Bricker & Eckler, Columbus, OH, Thomas D. Lambros, Bricker & Eckler, LLP, Columbus, OH, for B.A.T. Industries P.L.C.

Mark A. Belasic, Robert C. Weber, Hugh R. Whiting, Dennis L. Murphy, Jones, Day, Reavis & Pogue, Cleveland, OH, for R.J. Reynolds Tobacco Company, RJR Nabisco, Inc.

Cecil Marlowe, Richard J. Cusick, Jr., Phillip J. Campanella, Frank C. Woodside, III, Mary Jo Middelhoff, Gary R. Long, Thomas D. Lambros, Richard A. Schneider, King & Spalding, Atlanta, GA, W. Bruce Wold, Robert A. Cocchia, Ralph A. Campillo, Sedgwick, Detert, Moran & Arnold, San Francisco, CA, for Brown & Williamson Tobacco Corporation.

John Winship Read, Vorys, Sater, Seymour & Pease, Cleveland, OH, Amanda Martinsek, Vorys, Sater, Seymour & Pease, Cleveland, OH, for British American Tobacco Co., Ltd.

Cecil Marlowe, Richard J. Cusick, Jr., Phillip J. Campanella, Calfee, Halter & Griswold, Cleveland, OH, Craig E. Gustafson, Gary R. Long, Thomas D. Lambros, Richard A. Schneider, King & Spalding, Atlanta, GA, for Batus Holdings, Inc.

Diane P. Chapman, Thomas H. Shunk, Baker & Hostetler, Cleveland, OH, Lawrence R. Desideri, Thomas J. Frederick, Winston & Strawn, Chicago, IL, Joseph P. Archie, Louise E. Moyer, Dechert, Price & Rhoads, Philadelphia, PA, for Phillip Morris, Inc., Phillip Morris Companies, Inc.

Thomas P. Meaney, Jr., Kenneth J. Walsh, McDonald, Hopkins, Burke & Haber, Cleveland, OH, Marc E. Kasowitz, Marie V. Santacroce, Michael M. Fay, Kasowitz, Benson, Torres & Friedman, New York City, for Liggett & Myers, Inc., Liggett Group, Inc.

Thomas P. Meaney, Jr., Kenneth J. Walsh, Marie V. Santacroce, Michael M. Fay, Kasowitz, Benson, Torres & Friedman, New York City, for Brooke Group, Ltd.

Craig E. Gustafson, Gary R. Long, Thomas D. Lambros, Richard A. Schneider, King & Spalding, Atlanta, GA, Samuel R. Martillotta, Mansour, Gavin, Gerlack & Manos, Cleveland, OH, Patrick M. McLaughlin, John F. McCaffrey, McLaughlin & McCaffrey, Cleveland, OH, for Lorillard Tobacco Company, Loews Corporation.

Craig E. Gustafson, Gary R. Long, King & Spalding, Atlanta, GA, Samuel R. Martillotta, Mansour, Gavin, Gerlack & Manos, Cleveland, OH, for Lorillard, Inc.

Arthur R. Fama, Jr., Mark S. Cheffo, Skadden, Arps, Slate, Meagher & Flom, New York City, Samuel R. Martillotta, Mansour, Gavin, Gerlack & Manos, Cleveland, OH, Patrick M. McLaughlin, John F. McCaffrey, McLaughlin & McCaffrey, Cleveland, OH, for United States Tobacco Company.

Arthur R. Fama, Jr., Mark S. Cheffo, Skadden, Arps, Slate, Meagher & Flom, New York City, Steven D. Bell, Craig A. Marvinney, Ulmer & Berne, Cleveland, OH, Samuel R. Martillotta, Mansour, Gavin, Gerlack & Manos, Cleveland, OH, Patrick M. McLaughlin, John F. McCaffrey, McLaughlin & McCaffrey, Cleveland, OH, Steven Klugman, Harry Zirlin, Debevoise & Plimpton, New York City, for UST, Inc.

Kim M. Hastings, Charna E. Sherman, David J. Michalski, Hahn, Loeser & Parks, Cleveland, OH, for Tobacco Institute, Inc.

Cecil Marlowe, Phillip J. Campanella, Calfee, Halter & Griswold, Cleveland, OH, for Novelart Manufacturing Company, Eby–Brown Company, Riser Foods Inc., Rini Rego Supermarket, Inc.

### Memorandum of Opinion and Order

GAUGHAN, District Judge.

Before the Court is plaintiffs' motion to remand. (Doc. 7). For the reasons set forth below, the motion is denied.

### Facts

Plaintiffs Judith E. Chamberlain and William O. Crider, Ohio residents, filed this case on August 14, 1996 in the Cuyahoga County Court of Common Pleas on behalf of themselves and a purported class of other Ohio residents who are either addicted, or are in danger of becoming addicted, to cigarettes. (*See* Complt.) The complaint alleges eleven causes of action under Ohio statutory and common law arising out of defendants' alleged knowledge that nicotine is addictive and conspiracy to manipulate the level of nicotine in cigarettes for the purpose of creating and sustaining smokers' addictions to tobacco products. The complaint alleges claims for fraud and deceit (First Claim for Relief), conspiracy to, *inter alia,* restrain and suppress research and the dissemination of information as to the harmful effects of smoking (Second Claim for Relief), negligent misrepresentation (Third Claim for Relief), intentional infliction of emotional distress (Fourth Claim for Relief), negligence (Fifth Claim for Relief), negligent infliction of emotional distress (Sixth Claim

for Relief), violations of Ohio's consumer protection statutes, Ohio Rev.Code §§ 1345.02, 1345.03 and 1365.02 (Seventh Claim for Relief), breach of express warranty (Eighth Claim for Relief), breach of implied warranty (Ninth Claim for Relief), strict product liability under Ohio law (Tenth Claim for Relief) and a claim for equitable injunctive or declaratory relief (Eleventh Claim for Relief). Named as defendants in the *Chamberlain* action are various out-of-state tobacco manufacturers and related entities, an out-of-state trade association of tobacco manufacturers and four Ohio wholesale and retail suppliers and distributors of tobacco products: Novelart Manufacturing Company, a wholesale distributor located in Cincinnati; EBY–Brown Company, a wholesale distributor located in Springfield; The Kroger Co., a corporation having its principal place of business in Cincinnati operating retail grocery stores throughout the state; and Riser Foods Inc., a corporation having its principal place of business in Bedford owning and operating retail grocery stores throughout the state. (*See* Complt. at ¶¶ 20–23.) (The Ohio wholesale and retail suppliers and distributors are hereinafter collectively referred to as the "Ohio defendants.")

Defendants timely removed the case to federal court on the basis of diversity jurisdiction. Defendants assert that diversity exists because plaintiffs fraudulently joined the Ohio defendants for the specific purpose of defeating diversity over the action.[1] Plaintiffs now move to remand

---

1. Defendants assert that the same "consortium" of lawyers representing the plaintiffs in this case have followed a similar strategy in filing class action lawsuits in state courts across the country on behalf of nicotine-addicted smokers. Defendants assert that these state court class action suits were filed by the consortium of plaintiffs' lawyers in the wake of the Fifth Circuit's decision in *Castano et al. v. American Tobacco Co., et al.,* 84 F.3d 734 (5th Cir.1996). In *Castano,* the plaintiffs' lawyers raised, on behalf of a purported nationwide class of addicted cigarette smokers, the same underlying allegations as plaintiffs

raise in this case (*i.e.,* that the tobacco industry fraudulently concealed the addictive nature of nicotine and intentionally manipulated the nicotine in cigarettes to hook smokers to their products). The Fifth Circuit, however, decertified the nationwide class reasoning, in part, that the district court erred in certifying a nationwide class of addicted smokers without adequately evaluating how variations in state laws with respect to plaintiffs' "novel and untested" nicotine-addiction claims would affect the predominance and superiority of a class action suit. *See Castano,* 84 F.3d at 740–744. Defendants assert that the plain-

the action to state court, arguing that they have viable claims against the Ohio defendants and, therefore, complete diversity is lacking. In addition, plaintiffs argue that diversity jurisdiction does not exist because the jurisdictional amount in controversy requirement is not satisfied. Defendants argue that plaintiffs have no reasonable possibility of recovering against the Ohio defendants and, therefore, removal of the action is proper on the basis of diversity. They contend that the jurisdictional amount in controversy requirement is met.

### Standard of Fraudulent Joinder

■ The removing party bears the burden of demonstrating fraudulent joinder. *Alexander v. Electronic Data Systems Corp.*, 13 F.3d 940, 949 (6th Cir.1994). The Sixth Circuit has stated:

> There can be no fraudulent joinder unless it be clear that there can be no recovery [against non-diverse defendants] under the law of the state on the cause alleged or on the facts in view of the law.... One or the other at least would be required before it could be said that there was no intention to get a joint judgment, and that there was no colorable ground for so claiming.

*Id.,quoting Bobby Jones Garden Apartments, Inc. v. Suleski*, 391 F.2d 172, 176 (5th Cir.1968). "Therefore, the question is whether there is arguably a reasonable basis for predicting that the state law might impose liability on the facts involved." *Id.* Accordingly, if there is "arguably a reasonable basis for predicting" that the plaintiffs may recover against the Ohio defendants, this Court must remand this action to state court.

■ Removal statutes, moreover, are strictly construed, and all doubts as to the propriety of removal are resolved in favor of remand. *See id.* "[A]ny disputed questions [of] fact and ambiguities in the controlling state law should be resolved ... in favor of the non-removing party." *Id., quoting Carriere v. Sears Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.1990), *cert. denied*, 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990). In addition, while the determination as to the propriety of removal is based upon the plaintiff's pleadings at the time of removal, the court may pierce the pleadings and consider "summary judgment-type" evidence such as affidavits and deposition testimony in determining whether the standard for fraudulent joinder has been met. *See Cavallini v. State Farm Mut. Auto Ins. Co.*, 44 F.3d 256, 263 (5th Cir.1995).

### Analysis

Although plaintiffs assert in their memorandum in support of remand that their complaint alleges causes of action against the Ohio defendants for negligence, strict liability, breach of warranty, violations of Ohio's consumer protection statutes, breach of implied warranty and claims under Ohio's Product Liability Law, Ohio Rev.Code § 2307.71 *et seq.* (the "OPLA"), in urging remand plaintiffs argue only that they have viable claims against the Ohio defendants under the OPLA. (*See* Mot. to Rem. at 15–18, Pltf. Reply, Pltf. Supp.Mem.)

In addition, although they do not state to which of their claims against the Ohio defendants the argument pertains, plaintiffs also argue in their memorandum in

---

tiffs' consortium, "[h]aving lost in the Fifth Circuit," "vowed to relitigate" the class certification issue in state courts across the country. (Def.Br. in Opp. at 1.) Plaintiffs on the other hand argue that in filing the class actions in state court, they are following the Fifth Circuit's directive in *Castano* that their novel and untested state law claims for nicotine addiction injuries are best resolved by state courts. (Pltf.Mem. in Supp. of Rem. at

6.) Indeed, plaintiffs point out that in urging decertification of the nationwide class in *Castano*, the tobacco industry defendants themselves argued that the court in *Castano* would "inevitably ... need to construct new state law," and "federal courts sitting in diversity are particularly ill-suited to attempt to develop state common law where there is none." (*Id.* at 6, n. 4.)

support of their motion to remand that their claims are based in part upon the fact that cigarettes contain an inherently dangerous design defect (the ability to form a life-long and life-threatening addiction to nicotine) and "their unwitting addiction to cigarettes while still a minor," and that "[a]t this stage of the litigation, the question of the Ohio Wholesale/Retail Defendants' knowledge of the addictive qualities of cigarettes, as well as their participation in the marketing and promotion of cigarettes to minors is unanswered." (*Id.* at 19) Plaintiffs state that they have "every reason to believe," based upon evidence of the tobacco manufacturers' practices in marketing cigarettes to minors, "that the Ohio Wholesale/Retail Defendants, as suppliers and distributors, actively participate with the tobacco companies in the marketing, promotion and advertising of cigarettes to minors." (*Id.* at 21–24.)

The Court first addresses whether the Ohio defendants may be liable to plaintiffs under the OPLA as that is the only state law plaintiffs have specifically addressed in their memorandum in support of their motion to remand.

## I. The OPLA

Section 2307.78 of the OPLA sets forth the circumstances under which "suppliers"[2] may be liable under Ohio law for injuries caused by a product and provides:

(A) Subject to division (B) of this section and subject to section 2307.80 [relating to evidence of recall notification], 2315.20 [relating to the defenses of assumption of risk, contributory negligence or other contributory tortious conduct], and 2323.59 [relating to a presumption as to a plaintiffs driving under the influence of alcohol in products cases] of the Revised Code, a supplier is subject to liability for compensatory damages based on a product liability claim only if the claimant establishes, by

a preponderance of the evidence, that either of the following applies:

(1) **The supplier was negligent,** and, the negligence was the proximate cause of harm for which the claimant seeks to recover compensatory damages.

(2) **The product did not conform,** when it left the control of the supplier, **to a representation made by the supplier,** and the representation and the failure to conform to it were a proximate cause of harm for which the claimant seeks to recover compensatory damages. A supplier is subject to liability for the representation and the failure to conform to it even though the supplier did not act fraudulently, recklessly, or negligently in making the representation.

(B) **A supplier of a product is subject to liability** for compensatory damages based on a product liability under sections 2307.71 to 2307.77 of the Revised Code, **as if it were a manufacturer** of that product, **if the manufacturer of that product is or would be subject to liability** for compensatory damages based on a product liability claim ... **and any of the following applies:**

(1) The manufacturer of that product is not subject to judicial process in this state.

(2) The claimant will be unable to enforce a judgment against the manufacturer of that product due to actual or asserted insolvency of the manufacturer.

(3) The supplier owns ... owned ... the manufacturer of that product.

(4) The supplier is owned or ... was owned ... by the manufacturer....

(5) The supplier created or furnished a manufacturer with the design or formulation that was used to produce ... that product.

(6) The supplier altered, modified, or failed to maintain that product after is came into possession of ... the supplier ....

**2.** The parties agree that the Ohio defendants are "suppliers" of cigarettes.

(7) **The supplier marketed that product under its own label or trade name.**

(8) The supplier failed to respond ... to a request ... to disclose [the name of the manufacturer].

Ohio Rev.Code § 2307.78. (Emphasis added.)

### 1. Ohio Rev.Code § 2307.78(B)(7).

Plaintiffs first argue that the Ohio defendants are liable to them pursuant to Ohio Rev.Code § 2307.78(B)(7), which provides that a supplier of a product is liable as if it were a manufacturer if the supplier marketed the product under its own label or trade name. (Pltf.Mem. at 15–18.) Plaintiffs argue that the Ohio defendants are liable to them as if they were manufacturers under Ohio Rev.Code § 2307.78(B)(7) because Kroger markets cigarettes manufactured by the RJR Reynolds Tobacco Company under Kroger's private label, "Cost Cutter." (Pltf.Mem. at 15–17; Rep. at 2–3; Supp. Mem. at 6–9.) In support of this contention, plaintiffs submit the "Private Label Agreement" entered into between Kroger and "R.J. Reynolds Tobacco Company ... doing business as Forsyth Tobacco Products ('RJR')" in which RJR agreed to manufacture and sell exclusively to Kroger for Kroger's sale to the public "Cost Cutter" and/or "Sundance" brand name cigarettes. (*See* Pltf.Supp.Mem. in Supp. of Mot. to Rem.)[3]

Defendants admit that Kroger sells cigarettes manufactured by RJR under the trade name "Cost Cutter." (Def.Mem. in Opp. to Mot. to Rem. at 15.) Indeed, defendants concede that "Kroger might be deemed a manufacturer of Cost Cutter cigarettes" for purposes of imposing liabili-

ty under the OPLA. (*Id.* at 16.) However, defendants assert that Kroger's sale to the public of Cost Cutter cigarettes is "irrelevant to fraudulent joinder and the named plaintiffs' claims in this case" because plaintiffs have not demonstrated that they actually purchased "Cost Cutter" as opposed to other brands of cigarettes from Kroger. (Def.Br. in Opp. at 16 and note 17) ("... the two named plaintiffs do not claim to have ever smoked Cost Cutter cigarettes, much less that they became 'addicted' to such cigarettes. The absence of any such allegation is telling. Given that Kroger has no store in the Cleveland or Massillon areas where the two named plaintiffs live, it is predictable that plaintiffs have never smoked Cost Cutters.") In addition, defendants argue that the Court should not consider plaintiffs' arguments that the Ohio defendants may be liable to them pursuant to Ohio Rev.Code § 2307.78(B) as plaintiffs do not allege that theory of liability in their complaint.

Plaintiffs reply that they have viable claims against the Ohio defendants because "Plaintiffs have a possibility of establishing a cause of action against Kroger" as:

'(1) Kroger is a supplier of tobacco products in Ohio; (2) Kroger has supplied tobacco products in Cuyahoga and Stark counties the counties where Plaintiffs reside; (3) Kroger markets tobacco products under its own label or trade name; (4) Kroger's tobacco products are manufactured by R.J. Reynolds Tobacco Company ("RJR"), a named defendant in this action; and (5) Kroger currently continues to sell its own name brand of tobacco products, *i.e.,* "Cost Cutter" cigarettes even after admitting that it has specific information in its possession re-

---

**3.** Plaintiffs also contend that the other Ohio defendants distribute or sell "private label" products of RJR. (*See* Pltf.Supp.Mem. at 9–12.) Plaintiffs submit evidence indicating that RJR entered into private label agreements with Riser and EBY–Brown. However, plaintiffs do not indicate whether Riser and EBY–Brown actually sell or sold any

products pursuant to those agreements and do not identify the names of any private label products sold by Riser or EBY–Brown. Plaintiffs do not indicate whether RJR actually entered into a private label agreement with Novelart and submit no evidence of any such agreement.

garding nicotine addiction and the alleged manipulation of nicotine levels in cigarettes by the tobacco industry including, RJR. . . .'

(Plft.Rep. at 3.)

On June 17, 1997, defendants, however, filed a second supplemental memorandum in opposition to plaintiffs' motion to remand. (*See* Def.Sec.Supp.Mem.) In that memorandum, defendants argue that deposition testimony given by plaintiff Judith Chamberlain and Ruby Crider (named plaintiff William O. Crider's surviving spouse) demonstrates conclusively that the named plaintiffs did not smoke Cost Cutter cigarettes. (*Id.* at 3–4.) Judith Chamberlain was asked in her deposition whether she ever smoked Cost Cutters, and she said no. She identified only the national brands of Winston, Marlboro, Merit and Kent III as brands of cigarettes that she smoked. (Chamberlain Dep. at 45–46, Def.Sec.Supp.Mem., Ex. A.) Ruby Crider testified that her husband purchased cigarettes from Kroger, but she testified that the only brands she recalled her husband smoking were the national brands Camel, Kool, Philip Morris and Marlboro. (Crider Dep. at 45, 84–87, Def.Sec.Supp.Mem., Ex. B.)

Plaintiffs do not dispute this testimony, and they do not dispute defendants' assertions that the testimony conclusively demonstrates that the named plaintiffs did not smoke Cost Cutter cigarettes.

■ As the complaint plaintiffs filed in state court does not allege that the Ohio defendants are liable to them as if they were manufacturers under Ohio Rev.Code § 2307.78(B), but alleges only that the Ohio defendants are liable for negligence as suppliers of cigarettes under Ohio Rev. Code § 2307.78(A), (*see* Complt. ¶ 177), the

Court agrees with defendants that the Court need not consider whether defendants may be liable as manufacturers under Ohio Rev.Code § 2307.78(B) for purposes of determining whether the Ohio defendants have been fraudulently joined to defeat diversity. *See, e.g., Cavallini v. State Farm Mut. Auto Ins. Co.* 44 F.3d 256, 263 (5th Cir.1995) (when determining whether a nondiverse defendant has been fraudulently joined, court need not determine whether a claim has been stated against the nondiverse defendant under a legal theory not alleged in the state court complaint.)

■ Assuming plaintiffs had alleged that theory of liability in their state court complaint, in order to show that a supplier is liable as if it were a manufacturer under Ohio Rev.Code § 2307.78(B)(7), the plaintiff must have been injured by the product the supplier in question distributed under its own trade name. *See* Ohio Rev.Code § 2307.78(B)(7) ("A supplier of a product is subject to liability . . . as if it were a manufacturer *of that product,* if the manufacturer of that product is or would be subject to liability [under the OPLA] and . . . [t]he supplier in question *marketed that product* under its own trade name or label.") (Emphasis supplied.) In light of the undisputed testimony of Judith Chamberlain and Ruby Crider indicating that the named plaintiffs smoked only national brands of cigarettes, not the private label brands of Kroger or any other Ohio defendant, the Court could not conclude that there is a "reasonable basis for predicting" that Kroger (or any of the other Ohio defendants) may be liable to plaintiffs under Ohio Rev.Code § 2307.78(B)(7). *Alexander v. Electronic Data Systems Corp.,* 13 F.3d at 947.[4]

---

**4.** On February 16, 1997, plaintiffs filed an amended complaint naming three additional plaintiffs, Robert Rubinow, Paula Wohlerber and Raymond Sheppard. (*See* Am.Complt.) Unlike the original complaint, the Amended Complaint specifically alleges that "Plaintiffs, individually along with members of the Plain-

tiff Class have purchased and continue to purchase cigarettes manufactured, sold, distributed, supplied, marketed and advertised in Ohio by the Defendants which cigarettes include . . . Cost Cutter," (*id.* at ¶ 2), and that "[t]he [Ohio] Wholesale/Retail Defendants, including but not limited to Kroger, are liable

### 2. Ohio Rev.Code § 2307.78(B)(1).

■ Plaintiffs next argue that the Ohio defendants may be liable to them as manufacturers under Ohio Rev.Code § 2307.78(B)(1), which provides that a supplier may be liable under the OPLA as if it were a manufacturer of a product if the "manufacturer of [the] product is not subject to judicial process in this state." (Pltf.Mot. to Rem. at 17.) This theory of liability was also not alleged in plaintiffs' state court complaint; therefore, it is also not necessary for the Court to address this theory in determining whether the Ohio defendants were fraudulently joined. *See Cavallini,* 44 F.3d 256.

In any event, plaintiffs argue that the Ohio defendants might be liable under § 2307.78(B)(1) because "the Tobacco Industry Defendants" made statements in their notice of removal "that this Court lacks personal jurisdiction over some, if not all, of the Tobacco Industry Defendants ..." (Pltf.Mot. to Rem. at 17, quoting Defendants' Notice of Removal at 3, n. 1.) Defendants argue that under the "express language of § 2307.78(B)(1), a supplier may be deemed a manufacturer of a product if the actual manufacturer of *that product* is not subject to the Court's jurisdiction or service." (Def.Opp. at 17, *citing Welch Sand & Gravel v. O&K Trojan, Inc.,* 107 Ohio App.3d 218, 230, 668 N.E.2d 529 (1995) (stating that § 2307.78(B)(1) "is really a 'substitution' theory, holding one party liable in the stead of a potentially culpable but absent party.")) Defendants assert that any defendant manufacturer who actually sells cigarettes in Ohio is

subject to personal jurisdiction here even though defendants "who do not sell cigarettes in Ohio," such as various out-of-state holding companies that merely own the stock of subsidiary cigarette manufacturers, may not be. *Id.*

The Court agrees with defendants that Ohio Rev.Code § 2307.78(B)(1) contemplates holding a supplier of a product liable as if it were the manufacturer only where the manufacturer of *that product* is not subject to judicial process in this state. The Court, moreover, does not find defendants' general statement in their notice of removal that the Court lacks personal jurisdiction over some if not all of the defendants to present a "reasonable basis for predicting" that the manufacturer defendants might not be subject to judicial process here. Other than defendants' general statement, there is absolutely no evidence in the record suggesting that manufacturer defendants might not be subject to suit here. Indeed, the evidence in the record suggests the opposite. In 1997, various defendants in this action filed motions to dismiss the Amended Complaint as against them for lack of personal jurisdiction. (*See* Motion to Dismiss of the Tobacco Institute, Inc.; Motion to Dismiss of defendants American Brands, Inc., B.A.T. Industries, p.l.c., Batus, Inc., Batus Holdings, Inc., Loew's Corporation, RJR Nabisco, Inc., The Tobacco Institute, Inc. and UST, Inc.). However, the American Tobacco Company, Inc., R.J.R. Reynolds Tobacco Company, Brown & Williamson Tobacco Corporation, British American Tobacco Co., Ltd., Philip Morris, Inc., Liggett &

---

as if they were manufacturers pursuant to Ohio Revised Code 2307.78 as they marketed cigarettes under their own label or tradename, such as Kroger's registered trademark 'Cost–Cutter' brand of cigarettes." (Am. Complt. at ¶ 190.)

However, authority, including authority plaintiffs cite, indicates that the propriety of removal is determined by the allegations in the original complaint. *See* Pltf.Mot. to Rem. at 18, *citing Blair v. Migliorini,* 744 F.Supp. 165, 167 (N.D.Ohio 1990) ("Removability is determined on the basis of the Complaint and

the Notice of Removal ... as they read at the time the Complaint and the Notice of Removal are filed; subsequent events and pleadings are usually irrelevant"). *See also Pullman Co. v. Jenkins,* 305 U.S. 534, 537, 59 S.Ct. 347, 83 L.Ed. 334 (1939) (in determining the propriety of removal, the court considers "the plaintiffs' pleading at the time of removal.") Therefore, the "new" allegations in the Amended Complaint are not relevant to the determination of whether plaintiffs fraudulently joined the Ohio defendants in their state court complaint.

Myers, Inc., Lorillard Tobacco Company, Inc. and the United States Tobacco Company, did not file motions to dismiss the Amended Complaint as against them for lack of personal jurisdiction. Plaintiffs allege that these defendants manufactured cigarettes. (*See* Complt. ¶¶ 6–14.; *see also* Am.Complt at ¶¶ 9–17.) Thus, there is no evidence to suggest that "manufacturer" defendants intend seriously to advance the position in this litigation that they are not subject to judicial process in this state. Therefore, there is no evidence to suggest that plaintiffs may be in the position contemplated in § 2307.78(B)(1), where a plaintiff is not able to recover against a manufacturer of an allegedly defective product because the manufacturer is not subject to judicial process here. Accordingly, even if plaintiffs had alleged § 2307.78(B)(1) as a theory for holding the Ohio defendants liable in their state court complaint, the Court does not find that there is arguably a reasonable basis for predicting that plaintiffs may be able to impose liability on the Ohio defendants under that provision.

### 3. Ohio Rev.Code § 2307.78(A)

■ Although plaintiffs do not specifically argue in their motion to remand why the Ohio defendants are liable to them under Ohio Rev.Code § 2307.78(A), which provides that supplier of a product is liable if "[t]he supplier … was negligent and that negligence was a proximate cause of harm for which the claimant seeks recovery," plaintiffs' complaint alleges the Ohio defendants are liable under Ohio Rev.Code § 2307.78 by:

> (a) negligently fail[ing] to warn, advise, or instruct consumers of the cigarettes of the design and manufacturing defects [alleged in the complaint] which should have been known to these Defendants since, at a minimum 1988, the year the Surgeon General's Report "The Health Consequences of Smoking: Nicotine Addiction" was published;

> (b) negligently suppl[ying], distribut[ing], and/or s[elling] the cigarettes when they knew or should have known of the design and manufacturing defects which should have been known to these Defendants since, at a minimum 1988, the year the Surgeon General's Report "The Health Consequences of Smoking: Nicotine Addiction" was published.

(Complt. at ¶ 177.)

Defendants argue that plaintiffs cannot state a claim against the Ohio defendants under § 2307.78(A). Defendants argue that the Ohio defendants cannot be liable for negligence under § 2307.78(A)(1) for three reasons: plaintiffs have failed to allege "any actionable duty on the part of suppliers or nonmanufacturer sellers" under Ohio law, the Supreme Court's decision in *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992) establishes that plaintiffs' claims for failure to warn about nicotine are preempted by the Federal Cigarette Labeling and Advertising Act, 15 U.S.C. § 1331, *et seq.* and the Ohio defendants have no duty to warn regarding the risks of smoking, including the alleged risk of nicotine addiction, as such risks are "common knowledge" as to which there is no duty to warn. (Def.Opp. at 23–25.)

Defendants also argue that the Ohio defendants cannot be liable for the failure of a product to conform to a representation pursuant to Ohio Rev.Code § 2307.78(A)(2), submitting affidavit testimony that the Ohio defendants have never made any representation regarding cigarettes or addiction to cigarettes. (Def.Opp. at 28, Exs. A, B, C, D.) Defendants also argue that any claims against the Ohio defendants under the OPLA are barred by Ohio's two year statute of limitations as plaintiffs knew or should have known that their alleged injuries were caused by cigarettes well before two years prior to the filing of their lawsuit. (*Id.* at 10–12.)

Plaintiffs do not dispute defendants' assertions that the Ohio defendants made no

representations about cigarettes and nicotine, but they dispute defendants' arguments that *Cipollone* preempts their claims and that their claims are barred by the common knowledge doctrine and the statute of limitations. (*See* Pltf.Mot. to Rem.)

As plaintiffs do not argue that they have viable claims against the Ohio defendants pursuant to Ohio Rev.Code § 2307.78(A)(2) and do not dispute the affidavits submitted by the defendants indicating that the Ohio defendants did not make any representations about cigarettes, the Court concludes that there is not an "arguably reasonable" basis for predicting that the Ohio defendants might be liable to the plaintiffs under § 2307.78(A)(2).

With respect to § 2307.78(A)(1), as indicated above, plaintiffs allege in their complaint that the Ohio defendants are liable to them under that section for failing to warn them about and negligently selling cigarettes containing the "nicotine" defect they allege the Ohio defendants should have known about since at least 1988, the year the Surgeon General's report was published disclosing the addictive nature of nicotine. (*See* Complt. at ¶ 177.) However, under Ohio law, a supplier is liable for failure to warn only when he knows or should know of an alleged defect. *See Sapp v. Stoney Ridge Truck Tire*, 86 Ohio App.3d 85, 98, 619 N.E.2d 1172 (1993). Furthermore, there is no duty to warn under the OPLA of risks associated with a product that are "common knowledge." *See, e.g., Gawloski v. Miller Brewing Co.*, 96 Ohio App.3d 160, 163, 644 N.E.2d 731 (1994) (no duty under Ohio law to protect against "dangers [that] are generally known and recognized by the ordinary consumer"); *Consumers of Ohio v. Brown & Williamson Tobacco Corporation*, Case No. 94-3574, 1995 WL 234620 (6th Cir. Apr.19, 1995) (no duty under the OPLA to warn of "an open and obvious risk or a risk that is a matter of common knowledge.")

There is no allegation in plaintiffs' complaint that the Ohio defendants knew of the alleged nicotine "defect" any sooner than members of the general public. In support of their brief in opposition to plaintiffs' motion to remand, defendants submit affidavits of officers of each of the Ohio defendants, stating that the Ohio defendants did not know about the nicotine "defects" in cigarettes any sooner than when information about the addictiveness nicotine became available to the general public. The Ohio defendants all state they:

... never communicated with or received any information from any manufacturer of tobacco products regarding the nicotine levels in cigarettes (with the exception of the information that may be pre-printed on cigarette packages or contained in advertisements), the alleged regulation of nicotine levels in cigarettes, or nicotine 'addiction' ... never conducted any research regarding the levels of nicotine in tobacco products, the alleged regulation of nicotine levels in tobacco products, or nicotine 'addiction' ... never had any information from any source containing the nicotine levels of tobacco products (with the exception of the information that may be pre-printed on the cigarette packages or contained in advertisements), the alleged regulation of nicotine levels in cigarettes, or nicotine 'addiction,' except information reported in the news media such as television broadcasts, newspapers and magazines ...

(*See* Affidavit of Charles A. Rini, Sr., President and Chief Operating Officer of Riser Foods at ¶¶ 13–15, Def.Opp.Ex. A; Affidavit of Marvin H. Schwartz, V.P., Vice President of Novelart at ¶¶ 13–15, Def.Opp.Ex. B; Affidavit of Jode Bunce, Vice President of EBY–Brown at ¶¶ 13–15, Def.Opp.Ex. C; Affidavit of Terry L. Cox, Vice–President–Drug/General Merchandise/Pharmacy/Peyton's of Kroger at ¶¶ 15–17, Def. Opp.Ex. D.)

Plaintiffs do not dispute this affidavit testimony, nor do they come forward with any evidence or factual allegation that any of the Ohio defendants at any time had knowledge as to nicotine and cigarettes superior to the knowledge of the general public. Plaintiffs argue that the nicotine addiction defect they allege is not "common knowledge," relying primarily on *Burton v. R.J. Reynolds Tobacco Co.*, 884 F.Supp. 1515 (D.Kan.1995), in which the court refused to grant summary judgment in favor of tobacco *manufacturers* on alleged nicotine addiction claims where the plaintiff alleged (and presented evidence) that tobacco manufacturers failed to warn them about and fraudulently concealed information they knew about nicotine *prior* to the 1988 Surgeon General's report. (*See* Pltf.Mot. at 25.) On those facts, the *Burton* Court held that the manufacturers were not entitled to summary judgment on plaintiff's nicotine addiction claims on the ground of the common knowledge doctrine. The Court stated:

> Defendants would have the court find, as a matter of law, that because there is general common knowledge that cigarettes are dangerous, users of cigarettes are therefore imputed with knowledge of the extent and nature of all dangers relating to cigarettes. The court does not agree that such a finding is necessarily warranted. As the court stated in *Rogers v. R.J. Reynolds Tobacco Co.*, 557 N.E.2d 1045, 1054 (Ind.App.1990), '[t]here is no basis for our judicially noticing what the ordinary consumer's knowledge concerning the addictive qualities of cigarettes may have been when [plaintiff] began smoking in 1940. The state of knowledge attributable to the community of individuals consuming cigarettes has changed over time and will continue to do so. It was not until 1988 that the Surgeon General published a report informing of the addictive nature of cigarettes.'

884 F.Supp. at 1526.

However, neither *Burton* nor any other case on which the plaintiffs rely indicates that a supplier of cigarettes may be liable for negligently failing to warn about nicotine or for selling cigarettes where there is no allegation that the supplier knew about the addictiveness of nicotine or had some involvement in the alleged manipulation of the level of nicotine in cigarettes prior to the 1988 Surgeon General's Report. Likewise, no case suggests that a supplier may be liable to failing to warn about nicotine after the Surgeon General's report became public. Indeed, *Burton* suggests that even as to manufacturers who allegedly knew of and fraudulently concealed the addictiveness of nicotine prior to the report, the addictiveness of nicotine became a matter of common knowledge after the report was disseminated to the public. *See id.*

This Court finds that after the Surgeon General's report was made public, the addictiveness of nicotine became common knowledge. Therefore, this Court finds that the Ohio defendants cannot be liable to plaintiff pursuant to Ohio Rev.Code § 2307.78(A)(1) for failure to warn. Prior to the 1988 Surgeon General's Report, the Ohio defendants did not have any knowledge superior to the knowledge of the general public as to the nicotine defects plaintiffs allege and, therefore, did not have a duty to warn about them. Likewise, after the report the Ohio defendants had only the same knowledge as the general public as to the alleged nicotine defects, and after the report the "defects" became common knowledge.

In addition, although plaintiffs contend in their motion to remand (although they do not make such allegations in their complaint) that the Ohio defendants "actively participate" in the tobacco companies' overall cigarette marketing and selling strategies and benefit from the sale of cigarettes, (Pltf.Mot. at 19–20), plaintiffs do not dispute the Ohio defendants' assertions that the Ohio defendants made no representations about cigarettes or nicotine. Therefore, the Ohio defendants could not be liable to plaintiffs under the

theory that the Ohio defendants "unrealistically minimized the dangers" of nicotine in cigarettes or "implied that the dangers do not exist." *Cf. Gawloski,* 644 N.E.2d at 734 (stating that manufacturer of a product might be liable under Ohio law even where the dangers of a product it manufacturers are common knowledge if the manufacturer "through its advertised representations, unrealistically minimizes the known dangers or implies that the dangers do not exist.") Plaintiffs have cited no other authority and the Court has found none indicating that a supplier may somehow otherwise be liable under Ohio Rev. Code § 2307.78(A)(1) on facts like those involved here.

For the reasons stated above, this Court finds that there is not an "arguably reasonable basis" for predicting that the Ohio defendants could be liable to plaintiffs under § 2307.78(A)(1), either for failure to warn or for negligent sale.

In sum, for the reasons stated above, the Court concludes that there is not an arguably reasonable basis for predicting that plaintiffs may recover against the Ohio defendants under the OPLA. Because the Court concludes that there is not an arguably reasonable basis for predicting that plaintiffs may recover against the Ohio defendants under the OPLA for the reasons discussed, it is not necessary for the Court to address defendants' other arguments that plaintiffs' claims are preempted by *Cipollone* and are barred by the statute of limitations.

## II. Plaintiffs' Purported Other State Law Claims.

Plaintiffs assert in their memorandum in support of their motion to remand that they have alleged claims against the Ohio defendants for breach of warranty, unfair, deceptive or fraudulent business practices, unfair competition and false advertising and unconscionable acts and practices as authorized under Ohio's Consumer Protection Statutes and breach of implied warranties of merchantability and fitness for ordinary use in addition to claims under the OPLA.

Despite their assertion, plaintiffs' complaint mentions the Ohio defendants in only two causes of action: implied warranty, (Complt.¶¶ 164–165), and the count (apparently incorrectly) labeled "strict liability," in which plaintiffs allege that the Ohio defendants were negligent in selling cigarettes and failing to warn regarding the addictiveness of nicotine pursuant to Ohio Rev.Code § 2307.78(A)(1). (*Id.* at ¶¶ 176–177). Plaintiffs' complaint does not mention the Ohio defendants in any of the other causes of action set forth in the complaint, including plaintiffs' claim under Ohio's consumer protection statutes. (*See id.* ¶¶ 150–156.)[5] For this reason, the Court finds it disingenuous for plaintiffs to claim at this juncture that they allege claims against the Ohio defendants under Ohio's consumer protection statutes. *See, e.g., Masepohl v. American Tobacco Co.,* 974 F.Supp. 1245, 1255 (D.Minn.1997) (finding that plaintiffs' complaint did not allege a conspiracy claim against local cigarette distributors where it was clear from the face of the complaint that the conspiracy claim was not directed at the local distributors but only to the tobacco companies and tobacco research institutions).

■■■ It is clear from the face of plaintiffs' complaint and from the arguments plaintiffs make in support of their motion to remand that plaintiffs did not seriously assert their consumer protection claims against the Ohio defendants. Furthermore, even if plaintiffs' did allege this cause of action against the Ohio defendants, plaintiffs allege in their complaint that the "Defendants" violated Ohio's consumer protection statutes, Ohio Rev.Code §§ 1345.02, 1345.03 and 4165.02 by "their

**5.** Plaintiffs' consumer protection claim is alleged only against the "Defendants," a term plaintiffs have defined in paragraph 17 of their complaint to include the "Tobacco Companies, CTR and the Tobacco Institute." (*Id.* ¶ 17.)

conduct, including the manipulation of nicotine levels, suppression, subversion and distortion of medical and scientific research, misrepresentations and non-disclosures of material facts" regarding nicotine and by "falsely and deceptively representing that nicotine is not addictive and that Defendants do not manipulate the levels of nicotine in their cigarettes." (Complt. ¶¶ 152, 153.) However, as discussed above, plaintiffs do not dispute the Ohio defendants' affidavit testimony that they did not engage in this alleged conduct. Accordingly, even if plaintiffs had included the Ohio defendants in their consumer protection claim, plaintiffs have not alleged a colorable claim for violation of Ohio's consumer protection statutes against the Ohio defendants.

■ With respect to plaintiff's implied warranty claim, the Ohio Court of Appeals has ruled that claims for breach of the implied warranties of merchantability and fitness for a particular purpose are "preempted" by the OPLA. *Nadel v. Burger King Corp.*, 119 Ohio App.3d 578, 695 N.E.2d 1185, 1189–1190 (1997). Accordingly, there is not an arguably reasonable basis for predicting that the plaintiffs may recover against the Ohio defendants on that legal theory. ·

### The Jurisdictional Amount in Controversy.

■ Plaintiffs also assert in their motion to remand that this Court lacks diversity jurisdiction because the defendants have not proven by a preponderance of the evidence that the jurisdictional amount in controversy requirement has been met. (Pltf.Mot. to Rem. at 29).[6] Plaintiffs' complaint states only that plaintiffs seek damages "in excess of $25,000." (Complt. at "Prayer for Relief.") Defendants argue that the amount in controversy requirement is met because the lawyers for the plaintiff class in *Castano*, of which the

named plaintiffs here were members, represented to the *Castano* Court that plaintiffs' claims in that action exceeded the $50,000 amount in controversy requirement. (Def.Opp. at 29.)

■ The Court does not necessarily agree with defendants that the amount in controversy requirement in this case is met simply by virtue of representations made by lawyers in *Castano*. However, when a plaintiff's complaint does not set forth the specific amount of damages sought, the amount in controversy requirement is satisfied for purposes of removal when the defendants prove· that the amount in controversy "more likely than not" exceeds the jurisdictional requirement. *Gafford v. General Elec. Co.*, 997 F.2d 150, 158 (6th Cir.1993).

Defendants point out in their opposition brief that plaintiffs seek in this case compensatory, punitive and statutory damages on their alleged nicotine injury and manipulation claims (Complt., Prayer for Relief). They claim that the defendants "have been unjustly enriched" by the receipt of "billions of dollars in domestic cigarette sales and seek disgorgement of such profits" (*id.* at ¶¶ 155, 181(b)(c)) and they seek to require defendants to pay for a "medical monitoring fund" and to reimburse plaintiffs for "all medical expense" caused by defendants' alleged wrongdoing. (*Id.* at ¶ 181(d).) The Court finds on the basis of these allegations that defendants have met their burden of proving that plaintiffs' claims "more likely that not" meet the jurisdictional amount in controversy requirement.

### Conclusion

For the reasons stated above, this Court finds that plaintiffs do not have an arguably reasonable basis for recovery against the Ohio defendants and, therefore, diversity jurisdiction exists over the properly joined parties. Plaintiffs' motion to re-

6. The Federal Court Improvement Act of 1996 raised the amount in controversy requirement from $50,000 to $75,000. However, this case was filed before that change went into effect and, therefore, is governed by the $50,000 amount in controversy requirement.

mand this action (doc. 7), therefore, is denied.

IT IS SO ORDERED.